2004 CR 10214 - GAO

# Abstract and Title Company of New England
## Suite 220
## 135 State Street
## Springfield, Massachusetts 01103-1905

TIMOTHY J. HOWES

PHONE: 413-737-3734
FAX:     413-736-8533

RE 127 Woodcrest Circle, Chicopee, Mass.

August 10, 2004

To Whom It May Concern:

We hereby certify that the record owner of the above premises as of this date is JAAFAR M. HAMADEH, 127 Woodcrest Circle, Chicopee, Massachusetts by deed of James K. Denny dated May 25, 2004, and recorded with the Hampden County Registry of Deeds in Book 14386, Page 415. There is one "equity mortgage", a continuing open mortgage with a maximum ceiling of $42,200 dated September 9, 2002, and recorded with Hampden County Registry of Deeds in Book 12698, Page 97. While Mr. Hamadeh has proof that there is currently "no balance" on this equity loan, it still has not been officially discharged. Again, the maximum of draw on that equity line is $42,2000 limited, with current -0-balance, according to Fleet Bank, now owned by Bank of America.

Otherwise, as of this date, August 10, 2004, the premises known as 127 Woodcrest Circle, Chicopee, Massachusetts, with the buildings thereon, is not subject to any other liens, mortgages or any other encumbrances of record which would effect its equitable value or marketability, to my knowledge.

ABSTRACT AND TITLE COMPANY OF NEW ENGLAND, INC.

BY _____

TIMOTHY J. HOWES, GENERAL COUNSEL

# APPRAISAL OF REAL PROPERTY

## LOCATED AT:

127 Woodcrest Cir
Bk:14386 Pa:415 8-3-04 Hampden County Registry of Deeds
Chicopee, MA 01020-2038

## FOR:

Jaafar M. Hamadeh
127 Woodcrest Circle
Chicopee, MA  01020

## AS OF:

8-9-04

## BY:

Donald J. Tubbs

**UNIFORM RESIDENTIAL APPRAISAL REPORT**    File No. 408011-E

## Property Description

| | | | |
|---|---|---|---|
| Property Address 127 Woodcrest Cir | City Chicopee | State MA | Zip Code 01020-2038 |

Legal Description  Bk:14386 Pa:415 8-3-04 Hampden County Registry of Deeds    County Hampden

Assessor's Parcel No. 452-45    Tax Year 2004    R.E. Taxes $ 1,744.74    Special Assessments $ 0.00

Borrower N/A    Current Owner Jaafar M. Hamadeh    Occupant: ☒ Owner ☐ Tenant ☐ Vacant

Property rights appraised ☒ Fee Simple ☐ Leasehold   Project Type ☐ PUD ☐ Condominium (HUD/VA only)   HOA $ N/A /Mo.

Neighborhood or Project Name Aldenville    Map Reference E7 Arrow    Census Tract 8112.00

Sale Price $ N/A    Date of Sale N/A    Description and $ amount of loan charges/concessions to be paid by seller  None noted

Lender/Client Jaafar M. Hamadeh    Address 127 Woodcrest Circle, Chicopee, MA 01020

Appraiser Donald J. Tubbs    Address 30 Dickinson Street (rear), Chicopee, MA 01020

| Location | | Predominant occupancy | Single family housing | | Present land use % | | Land use change |
|---|---|---|---|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | | PRICE $(000) | AGE (yrs) | | | |
| Built up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | ☒ Owner | Low 85 | 25 | One family 85 | ☒ Not likely ☐ Likely | |
| Growth rate | ☐ Rapid ☒ Stable ☐ Slow | ☐ Tenant | High 200 | 65 | 2-4 family 5 | ☐ In process | |
| Property values | ☒ Increasing ☐ Stable ☐ Declining | ☐ Vacant (0-5%) | Predominant | | Multi-family 5 | To: N/A | |
| Demand/supply | ☐ Shortage ☒ In balance ☐ Over supply | ☐ Vac.(over 5%) | 125-175 | 25-45 | Commercial 5 | | |
| Marketing time | ☒ Under 3 mos. ☐ 3-6 mos. ☐ Over 6 mos. | | | | | | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics:  South Hadley town line to the north, I-90 to the south, I-391 to the west and Route 33 to the east.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.):
This is a residential neighborhood made up of homes in a variety of styles.  There are some commercial businesses nearby.  This mixed use is market accepted and not considered adverse.  Neighborhood utilities are adequate; properties are average in design, functional utility, appearance and appeal.  Subject is within average proximity to schools, recreation, shopping, employment and public transportation.  Protection from detrimental conditions including police and fire protection are average.  Highway access is Route 33 to I-90 which connects to all major arteries and employment centers.  There are no adverse conditions which would affect the subject's marketability.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):
Typical marketing time is about 1-3 months when listed within 10% of ultimate selling price.  However, extended marketing times are not unusual.  Adequate financing is available from local lenders.  Loan concessions and buydowns are not unusual but not prevalent in this market.  The market is active and brokers are reporting a shortage of inventory.

Project Information for PUDs (If applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)?   ☐ Yes ☒ No

Approximate total number of units in the subject project  N/A    Approximate total number of units for sale in the subject project  N/A

Describe common elements and recreational facilities:  N/A

| | | | |
|---|---|---|---|
| Dimensions  See deed. | | Topography | Level |
| Site area  7,405sf | | Size | 7,405sf/Typical |
| Specific zoning classification and description  Res A 10000sf x 100' frontage | Corner Lot ☐ Yes ☒ No | Shape | Rectangular |
| Zoning compliance ☐ Legal ☒ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | | Drainage | Appears adequate |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | | View | Average |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | Asphalt | ☒ | ☐ | Landscaping | Average |
| Gas | ☒ | | Curb/gutter | None | ☐ | ☐ | Driveway Surface | Asphalt |
| Water | ☒ | | Sidewalk | None | ☐ | ☐ | Apparent easements | None noted |
| Sanitary sewer | ☒ | | Street lights | Yes | ☒ | ☐ | FEMA Special Flood Hazard Area ☐ Yes ☒ No | |
| Storm sewer | ☒ | | Alley | N/A | | | FEMA Zone  C | Map Date 9/29/1978 |
| | | | | | | | FEMA Map No.  2501370010A | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.):  Typical utility easements for electricity, sewer and telephone do not affect value.  No apparent adverse easements, encroachment, special assessments or adverse conditions noted.

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units  1 | Foundation  Block | Slab  N/A | Area Sq. Ft.  1,110 | Roof  Unk ☐ |
| No. of Stories  1 | Exterior Walls  Vinyl | Crawl Space  N/A | % Finished  50% | Ceiling  Unk ☐ |
| Type (Det./Att.)  Detached | Roof Surface  Composition | Basement  Full | Ceiling  Suspended | Walls  Unk ☐ |
| Design (Style)  Ranch | Gutters & Dwnspts.  Aluminum | Sump Pump  None noted | Walls  Wood | Floor  Unk ☐ |
| Existing/Proposed  Existing | Window Type  Dhg/Thermal | Dampness  None noted | Floor  WW/Inlaid | None  Unk ☒ |
| Age (Yrs.)  49 | Storm/Screens  Aluminum | Settlement  None noted | Outside Entry  None | Unknown  ☐ |
| Effective Age (Yrs.)  5 | Manufactured House  No | Infestation  None noted | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | 1 | | 1 | | | | | | 1,110 |
| Level 1 | | 1 | | 1 | | 1 | | 3 | 1 | | | 1,110 |
| Level 2 | | | | | | | | | | | | |

Finished area above grade contains:  6 Rooms;  3 Bedroom(s);  1 Bath(s);  1,110 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: 2 car garage |
|---|---|---|---|---|---|---|---|---|---|---|
| Floors | WW/Cer. tile/Good | Type | BBHW | Refrigerator | P | None | | Fireplace(s) # None | ☐ | None ☐ |
| Walls | Drywall/Average | Fuel | Gas | Range/Oven | P | Stairs | | Patio  Block | ☒ | Garage  # of cars |

# UNIFORM RESIDENTIAL APPRAISAL REPORT

Valuation Section                                                                                        File No.  408011-E

## COST APPROACH

| | | |
|---|---|---|
| ESTIMATED SITE VALUE | = $ | 35,000 |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | |
| Dwelling  1,110 Sq. Ft. @$  91.05 | = $ | 101,066 |
| 1,110 Sq. Ft. @$  12.15 | = | 13,487 |
| Porch | = | 7,973 |
| Garage/Carport  Sq. Ft. @$ | = | |
| Total Estimated Cost New | = $ | 122,526 |
| Less  Physical  Functional  External | | |
| Depreciation  9,422 | =$ | 9,422 |
| Depreciated Value of Improvements | =$ | 113,104 |
| "As-is" Value of Site Improvements | =$ | 5,000 |
| INDICATED VALUE BY COST APPROACH | =$ | 153,104 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property):  Cost figures are from the R.S. Means Square Foot Cost Manual. Accrued depreciation is estimated using the age life method.  Land value was projected after reviewing land sales in the area.

Estimated remaining economic life = 60

## SALES COMPARISON ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address  127 Woodcrest Cir  Chicopee, MA | | 135 Woodcrest Circle  Chicopee, MA | | 357 Irene Street  Chicopee, MA | | 56 Paradise Street  Chicopee, MA | |
| Proximity to Subject | | 0.01 miles | | 0.95 miles | | 0.93 miles | |
| Sales Price | $  N/A | $ | 142,000 | $ | 151,000 | $ | 169,000 |
| Price/Gross Living Area | $ | $  144.31 | | $  138.79 | | $  128.81 | |
| Data and/or | Inspection, MLS | MLS/Assessor/Realtor | | MLS/Assessor/Realtor | | MLS/Assessor/Realtor | |
| Verification Source | Assessor | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Sales or Financing | | Conventional | | Conventional | | Conventional | |
| Concessions | | None disclosed | | None disclosed | | None disclosed | |
| Date of Sale/Time | | 12-19-03 CLS | +4,970 | 4-20-04 CLS | | 6-30-04 CLS | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee simple | Fee simple | | Fee simple | | Fee simple | |
| Site | 7,405sf | 7,332sf | | 10,890sf | | 8,581sf | |
| View | Average | Average | | Average | | Average | |
| Design and Appeal | Ranch/Average | Ranch/Average | | Ranch/Average | | Ranch/Average | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Age | 49 | 49 | | 46 | | 49 | |
| Condition | Good | Average | +5,000 | Average | +5,000 | Good | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 6  3  1 | 5  3  1 | | 6  3  1 | | 5  3  1 | |
| Gross Living Area | 1,110 Sq. Ft. | 984 Sq. Ft. | +1,890 | 1,088 Sq. Ft. | | 1,312 Sq. Ft. | -3,030 |
| Basement & Finished | Full | Full | | Full | | Full | |
| Rooms Below Grade | Rec. room, Den | Rec. room | +1,000 | None | +2,000 | Full bathroom | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | BBHW/None | BBHW/None | | BBHW/None | | BBHW/None | |
| Energy Efficient Items | None noted | None noted | | None noted | | None noted | |
| Garage/Carport | None | None | | None | | 2 car garage | -4,000 |
| Porch, Patio, Deck, | Porch, Patio | Porch | +1,000 | Deck | +2,000 | Porch | +1,000 |
| Fireplace(s), etc. | None | None | | None | +1,000 | None | |
| Fence, Pool, etc. | Fence | None | +1,000 | None | +1,000 | None | +1,000 |
| Net Adj. (total) | | ☒ +  − $ | 14,860 | ☒ +  − $ | 11,000 | ☐ +  ☒ − $ | 5,030 |
| Adjusted Sales Price | | | | | | | |
| of Comparable | | $ | 156,860 | $ | 162,000 | $ | 163,970 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.):  Sale #1 is over six months old and an approximate time adjustment was made at .05% per month. Condition adjustments are based on realtor comments. Size adjustments are based on $15.00 per square foot of GLA difference. The final value is supported by all three sales. Due to a strong market, emphasis is on the higher range of value.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data | 5-26-04 | None within past year | None within past year | None within past year |
| Source, for prior sales | $1.00 | | | |
| within year of appraisal | Reg. of Deeds | MLS/Assessor/Public records | MLS/Assessor/Public records | MLS/Assessor Public records |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:  The subject transferred within the past year in a non arm's length transaction and has not been listed for sale within 12 months.

| | | | |
|---|---|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH | | $ | 163,000 |
| INDICATED VALUE BY INCOME APPROACH (if Applicable)  Estimated Market Rent  $  N/A  /Mo. x Gross Rent Multiplier  N/A  = $ | | | |

This appraisal is made  ☒ "as is"  ☐ subject to the repairs, alterations, inspections or conditions listed below  ☐ subject to completion per plans & specifications.
Conditions of Appraisal:  Appraisal is made "as is" with no conditions neccessary.

# Subject Photo Page

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 127 Woodcrest Cir | | | | | |
| City | Chicopee | County | Hampden | State | MA | Zip Code | 01020-2038 |
| Lender | Jaafar M. Hamadeh | | | | | |



**Subject Front**

127 Woodcrest Cir
Sales Price      N/A
GLA              1,110
Total Rooms      6
Total Bedrms     3
Total Bathrms    1
Location         Average
View             Average
Site             7,405sf
Quality          Average
Age              49



**Subject Rear**





**Subject Street**



File No.   408011-E

| Borrower/Client   N/A | | | |
|---|---|---|---|
| Property Address   127 Woodcrest Cir | | | |
| City  Chicopee | County  Hampden | State  MA | Zip Code  01020-2038 |
| Lender   Jaafar M. Hamadeh | | | |

### • General Text Addendum:

NOTE:  This is a summary appraisal report which is intended to comply with the reporting requirements set forth under Standard Rule 2.2(b) of Uniform Standards of Professional Appraisal Practice for a Summary Appraisal Report.  As such, it presents only summary discussions of the data, reasoning and analyses that were used in the appraisal process to develop the appraiser's opinion of value.  Supporting documentation that is not provided with the report concerning the data, reasoning, and analyses is retained in the appraiser's file.  The depth of discussion contained in this report is specific to the needs of the client and for the intended use (Mortgage Lending Purposes only) stated in this report.  The appraiser is not responsible for unauthorized use of this report.

To develop the opinion of value, the appraiser performed a complete appraisal process, as defined by Uniform Standards of Professional Appraisal Practice.  This means no departures from standard rule 1 were invoked.

TAXES:
The 2004 assessed value of the subject is $100,100 based on a tax rate of $17.43 per thousand.

ZONING:
The subject is zoned Res A for single family homes.  The minimum lot size under the current zoning regulation is 10,000 square feet making this a legal non conforming use under pre existing conditions.  In the event of a major loss, it could be rebuilt without obtaining a zoning variance.

HIGHEST AND BEST USE:
Highest and best use is defined as:  "That reasonable and probable use that will support the highest present value, as defined, as of the effective date of the appraisal.  Alternatively, that use, from among reasonably probable and legal alternative uses, found to be physically possible, appropriately supported, financially feasible, and which results in highest land value."
The definition above applies significantly to the highest and best use of the land.  It is to be recognized that in cases where a site has existing improvements on it, the highest and best use may very well be determined to be different from the existing use.  The existing use will continue, however, unless and until land value in its highest and best use exceeds the total value of the property in its existing use.
After analyzing the neighborhood, the highest and best use of this property is its current use as a single family dwelling.

COMMENTS ON COST APPROACH:
The cost approach has as its premise the valuation of the site by comparison with other sites in the area that have sold in the recent past, making adjustments for differences to indicate a site value estimate.  To this site value is added the estimated cost to reproduce or replace the improvements, less any loss of value (depreciation) that might have taken place.  In an appraisal analysis, the Cost approach is based on the concept that in informed purchaser will pay no more for a property than the cost of producing a substitute property with the same utility as the subject property.  This approach to value is primarily applicable when the property being appraised involves specialty improvements for which there are no comparable properties on the market or reliable income generated by the property.
With this approach, due to the age of the home and the subjectivity involved in estimating accrued depreciation, in this appraiser's judgment, there is a more reliable method of estimating the subject's value.  I have considered this approach, but have decided not to utilize the Cost Approach to Value.

DEPRECIATION:
The age-life method of depreciation is based primarily on observation.  Based on this appraiser's observation of the improvements as compared with other homes in the neighborhood, subject's condition, design and economic forces, it is estimated that the subject has an estimated remaining economic life of 60 years.

COMMENTS ON INCOME APPROACH TO VALUE:
The Income Approach, also known as the Gross Rent Multiplier Analysis, has as its premise the translating of monthly rental value into an estimate of capitalized income by the the use of rent multiplier which reflect the probable quality of duration of the amenity returns in future years.  For residential properties, the Gross Rent Multiplier Analysis is regarded as the Income Approach because it is based on the capacity of the residence to produce rental income.  Typically, single family homes are not sold for investment purposes.  There is also insufficient data in the marketplace to arrive at an accurate GRM, therefore, the income approach is not feasible.

COMMENTS ON DIRECT SALES APPROACH TO VALUE:
This is one of the most appropriate methods of valuation for types of property similar to the subject property.  Sales were reviewed and adjustments were made to the comparables for their differences from the subject property.  Comparables were then chosen which were similar to the subject.  Because of adequate sales of similar properties, in this appraiser's judgment, this approach to value would give the most reliable estimate of value.  Consequently, I have considered and decided to utilize this approach to value.

18'
Porch
Family Room
11'
20'
Kitchen
Bath
Bedroom
35'
Closet
24'
CL
Living Room
Bedroom
Bedroom
38'

FIRST FLOOR
NOT TO SCALE

**SKETCH CALCULATIONS**

A1
A2

| | |
|---|---|
| A1 : 18.0 x 11.0 = | 198.0 |
| A2 : 38.0 x 24.0 = | 912.0 |
| First Floor | 1110.0 |
| **Total Living Area** | **1110.0** |

Form SKT.BldSkl — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

Subject
127 Woodcrest Cir
Comparable #1
135 Woodcrest Circle
(0.01 miles)
Comparable #2
357 Irene Street
(0.95 miles)
Comparable #3
56 Paradise Street
(0.93 miles)
2500 ft
©2003 GDT

**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

* Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.  Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

# STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**    The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it.  The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title.  The property is appraised on the basis of it being under responsible ownership.

2.  The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area.  Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5.  The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.  The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal.  Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent  conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.    Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.  The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.  The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

**APPRAISER'S CERTIFICATION:**  The Appraiser certifies and agrees that:

1.  I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation.  If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2.  I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report.  I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3.  I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4.  I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction.  I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5.  I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6.  I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal.  I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7.  I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply.  I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8.  I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report.  I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them.  I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9.  I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report.  If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report.  I certify that any individual so named is qualified to perform the tasks.  I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**  127 Woodcrest Cir, Chicopee, MA 01020-2038

**APPRAISER:**

Signature: *Donald J. Tubbs*
Name:  Donald J. Tubbs
Date Signed:  August 10, 2004
State Certification #:  4177
or State License #:

**SUPERVISORY APPRAISER (only if required):**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____