# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 04-10214-GAO** |
| | ) | |
| **MOHAMED HAMADE** | ) | |

## GOVERNMENT'S SUPPLEMENT AND RESPONSE TO DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE QUESTIONING BY DEFENSE REGARDING THE INITIATION OF THE INVESTIGATION OF THE DEFENDANT

The United States of America, by Michael J. Sullivan, United States Attorney, and

Kimberly P. West and Aloke S. Chakravarty, Assistant United States Attorneys for the District

of Massachusetts, hereby expands on the legal and discretionary bases for the preclusion of

questioning and argument by the Defense regarding law enforcement's initiation of the

investigation into the defendant's conduct.  As is now evident, the Defendant does intend to

broach the topic of the Government's motion *in limine* and for the reasons set forth below, the

court should not permit this line of inquiry.  If the Court were to allow the Defendant to inquire

about this subject matter, the trial must be unnecessarily delayed to comply with the Classified

Information Procedures Act.

## Statement of Relevant Facts

The Defendant, Mohamed Hamade, is charged in a three-count indictment alleging that

Hamade materially misrepresented, to immigration services of the United States, the existence of

his 1991 marriage in Greece.   In 1998, Hamade married Naomi DeChristopher in Vermont, and

shortly thereafter, was permitted to adjust his status from a visitor to the United States, to a

permanent resident.  At Defendant's interview with Immigration and Naturalization Services

("INS") in January 2000,  in order to obtain legal permanent residency in the United States,

Hamade told Immigration Officer Toni Swanson ("Swanson") that he had a child with a former

girlfriend, but that he had not previously been married to her.  Approximately three years after

obtaining his green card, in the Defendant's application to become a naturalized citizen of the

United States, Hamade again misrepresented that he had not been married prior to 1998.  Finally,

in 2003, at his interview with United States Citizenship and Immigration Services ("CIS", the

successor agency to the INS for the function of determining immigration benefits), the

Defendant misrepresented that he had not been married prior to his marriage to Ms.

DeChristopher to Immigration Officer Heather Berger ("Berger").  These acts provide the basis

for the indictment.

In May 2003, Immigrations and Customs Enforcement Special Agent Gregory Nevano

("Nevano"), who at the time was on the Joint Terrorism Task Force ("JTTF") in Boston,

received some classified information.  As a result of the receipt of that classified information, the

JTTF took several investigative measures.  One of the steps that Nevano took was to examine the

Defendant's immigration file.  It became apparent that the Defendant may have made

misrepresentations regarding an earlier marriage in Greece.  Nevano obtained a copy of the

Greek Marriage certificate indicating that Hamade had in fact married the mother of his child in

Greece in 1991.

In December 2002, the Defendant applied to become a citizen of this country and was

required to have a naturalization interview with CIS.  When the interview was scheduled,

Nevano told Immigration Officer Berger that the Defendant's marriage was suspect and that the

JTTF had an interest in the Defendant.  Nevano did not communicate any classified information

to Berger.  Berger, who had conducted hundreds of interviews of individuals suspected of committing marriage fraud upon the INS and CIS, conducted the naturalization interview of the Defendant in 2003.  The Defendant lied about his earlier wife again during this interview.

In December 2003, the Defendant traveled to Greece.  After Agent Nevano learned that the Defendant had left the country, Nevano notified Customs and Border Protection ("CBP") to have the Defendant interviewed upon his return.  Nevano did not communicate any classified information to CBP.  On January 10, 2004, the Defendant returned to the United States through New York's John F. Kennedy Airport, where he was given a secondary screening by CBP Officer James Bratton ("Bratton").  The Defendant told Bratton that he had traveled to Greece to visit his daughter from his previous marriage to a Greek citizen.

The Government intends to call Officers Swanson, Berger and Bratton as witnesses in its case-in-chief.  In addition, the Government intends to call CIS Keeper of the Records, Joanne Sasson.  No classified information, nor JTTF testimony is being offered by the Government as evidence.  The Defendant has noticed that he intends to call Agent Nevano and that he intends to inquire into the basis for the JTTF's interest in the Defendant.

## ARGUMENT

I.    **The District Court has the discretion to and should limit the scope of cross-examination in this case.**

The District Court can and should properly limit the scope of cross-examination in this case.  Defendant has indicated through his response to the Government's motion *in limine*, that he intends to explore the basis for the JTTF's interest in him.  Through inquiry at the July 30,

2004 detention hearing[1] Defendant learned that there was classified information concerning the Defendant which was unrelated to the charges and it was not required to be produced to the defendant.  The line of inquiry now sought by the Defendant is inappropriate in this case and should be foreclosed to either party.  This is not a case of the Government wishing to produce evidence to a jury and to preclude a vigorous cross-examination of the evidence produced. Rather, the Defendant wishes to inject the existence, predication and nature of the JTTF's interest in the Defendant for the stated reason of exploring the Government's bias against the Defendant and the nature of the Government's case.  Because this information is not relevant to the indictment, has little, if any, probative value to any issue in the case, is likely to confuse, distract and mislead a jury and will prejudice the Defendant, such an inquiry should be off-limits to both parties.

Federal Rule of Evidence 611(b) explicitly recognizes the Court's discretion and responsibility to limit cross-examination to "the subject matter of the direct examination and matters affecting the credibility of the witness.  The court may, in the exercise of discretion,

---

[1]At the detention hearing in this matter, former counsel for the defendant sought classified information in this case which was arguably discoverable pursuant to the Jencks Act. Counsel stated, "My only concern is that I'm assuming, and we all are, that Mr. Hamade is not here because he lied on an INS document.  Let's face it. Let's be honest.  But, of course, the government is denying anything else."  (Det. Tr. P. 47).  The Government made clear to the Defendant that the classified national security information was unrelated to the charges in the indictment.  The Magistrate Judge was then shown, *ex parte*, classified information, and then declined to order the government to produce the material to the defense.  The Court stated, "There's nothing in it that is any way inconsistent [with Agent Nevano's testimony.] There's nothing in it that's in any way exculpatory, and I think the representation that the agent made [that the information deals with other matters that have nothing to do with the case]... accurately describes it, so I decline to turn it over. " (Det. Tr. at 49-50.)  Then-counsel also commented on the potential prejudice to the defendant if this information would be exposed to a fact-finder, "... I feel like there's nothing I can do because, obviously, whatever the Court sees in there is going to be in your mind..."  *Id.*

4

permit inquiry into additional matters as if on direct examination."

Despite defendant's constitutional arguments, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 413 (1988).  Evidence relating to why the Defendant was selected for prosecution that is unrelated to the charges or defenses in the indictment is irrelevant and properly excludable under the Sixth Amendment.  *See United States v. Zaccaria*, 240 F.3d 75 (1st Cir. 2001)("Nevertheless, cross-examination is not a freestyle exercise, but rather, must be conducted within reasonable limits.")(*citing to Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *United States v. Chaudhry*, 850 F.2d 851, 856 (1st Cir. 1988)). The trial judge should set suitable boundaries.  *Id.*; *United States v. Twomey*, 806 F.2d 1136 (1st Cir. 1986)(to establish abuse of discretion in limiting cross-examination, "defendant must show that the restrictions imposed were clearly prejudicial.")

Defendant's reliance on *Crawford v. Washington,* 541 U.S. 36 (2004), is misplaced.  In *Crawford*, the Court iterated that the scope of cross-examination must extend to *testimonial* hearsay evidence when it is used against a criminal Defendant because of the Sixth Amendment right to confrontation.  That holding is simply inapposite to the instant case.  In this case, the Government is expressly *not* offering certain testimony against the defense and has sought a pre-trial ruling to confirm this limitation.  *Crawford* does not create a right to confront information possessed by the Government which is not implicated by the criminal indictment. *Id.* Consequently, the Supreme Court and the First Circuit firmly endorse the trial court's discretion to limit the scope of cross-examination.  *See Chaudhry*, 850 F.2d at 856-857.

Here, the charges center around the fact that the Defendant had been married in 1991, and

misrepresented the existence of this marriage to the INS/CIS on three separate occasions.
Because the interest of the JTTF in the Defendant, and the reasons for its interest, are wholly
unrelated to the charged activities, evidence or testimony relating to such interest is irrelevant to
a fact-finder. In fact, such evidence would confuse, mislead and distract a jury from determining
the appropriate factual issues in the case, the elements of the charged offenses.

The Defendant has offered no legally cognizable defense which would require inquiry
into the basis for the Government's investigation of the Defendant. Bias and the nature of the
case are not legal defenses, and the Defendant has failed to make a *prima facie* showing of why
the reasons for the investigation are relevant. Potential bias of the Government's witnesses
necessarily requires that the witnesses for the Government have some personal stake in the
conviction of the Defendant – this is simply not the instant case, and cannot be made so by the
fact of the JTTF investigation. Moreover, the Defendant does not even know what the answers
to his questions would be, except that they would involve classified information. Furthermore,
the questions to which the defendant is accused of answering falsely are standard questions in
the immigration process and are not tainted by any bias or the JTTF investigation.

Regardless of the reasons for the investigation, the Government's case is about evidence
that the Defendant committed immigration fraud and made material false statements to
immigration officers. The false statements were neither to a JTTF agent, nor were the related to
terrorism; the Defendant lied about his earlier marriage. In light of this evidence, the
Government's decision to prosecute the Defendant is entirely proper.[2]

---

[2] *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("so long as the prosecutor had
probable cause to believe that the accused committed an offense defined by statute, the decision
whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests
entirely in his discretion"); *see also Wayte*, 470 U.S. at 607-08 (prosecutor has broad discretion

By eliciting the reason for the JTTF investigation, the Defendant may argue that the immigration officers' credibility is questionable, or that the Defendant is being improperly prosecuted. Both of these arguments are improper, the first because the Government's witnesses were not aware of the reasons for the JTTF investigation and the misrepresentations to the immigration officers had nothing to do with terrorism, and second, because the improper prosecution argument at trial would call for jury nullification. This is especially the case when the Defendant has never before made such a claim, and does not even know the reasons for the JTTF's interest in the Defendant. Even if the record did support a claim that the Defendant should not have been prosecuted, the Defendant still would not have met his *prima facie* burden of establishing a selective prosecution claim.[3]

Moreover, it is the Defendant who intends to call the JTTF case agent. Since Nevano can offer no testimony that will make it less likely that the Defendant misrepresented the existence of his earlier marriage, it appears that he will be called just to be impeached. The classified information which Nevano obtained is not relevant to any issue regarding whether the Defendant lied on his immigration forms and to Officers Swanson and Berger. There are cases in which classified information leads to an investigation which results in a criminal indictment in which cross-examination as to the nature of the classified information is essential to a fair

---

in assessing factors such as the strength of a case, its general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan.)

[3] A selective prosecution claim, as a claim of a defect in instituting the prosecution, must be made before trial. Fed. R. Crim. Pro. 12(b)(3)(A). Such a claim has not been made. In any event, to support a claim of selective prosecution, the Defendant must establish that the decision to prosecute was motivated by a discriminatory purpose. *Wayte*, 470 U.S. at 608. Because he has failed to do so, he is not entitled to put evidence relating to selective prosecution before the jury or to argue to the jury that he has been unfairly singled out for prosecution.

determination of guilt of the accused.  However, as previously determined by the Magistrate

Judge, this is not such a case.


**II.        The reason for the classified investigation enforcement is irrelevant to a fair and complete adjudication of the indictment – Fed. R. Evid. 402.**

The proper scope of inquiry at a criminal trial starts with the indictment and the

elements of the charged offenses.  *See United States v. Lamberty*, 778 F.2d 59, 61 (1st Cir. 1985).

 In addition, the legal defenses to these elements may also be explored.  *Id.*  In this case, the line

of inquiry which the Defendant seeks to pursue accomplishes none of these goals, and should be

precluded *in limine*.[4]

The Defendant's intended line of inquiry is irrelevant.  Federal Rule of Evidence 402

prohibits the admission of irrelevant evidence and defines relevance as evidence "having any

tendency to make the existence of any fact that is of consequence to the determination of the

action more probable than it would be without the evidence."  As the Eighth Circuit has

cautioned:

> Although the definition of "relevant evidence" given in Federal Rule of Evidence 401
> is broad, it does have limits. Evidence must be probative of a fact of consequence in
> the matter, and must have a tendency to make the existence of that fact more or less
> probable that it would have been without the evidence.

*United States v. Hollister*, 746 F.2d 420, 422 (8th Cir. 1984).

Whether a fact is material is determined by the substantive law that governs an

action, which in a criminal case "consists of elements of the offense charged and any relevant

---

[4]Moreover, if the Court finds that the line of inquiry is irrelevant, then Nevano should not
be permitted to be called as a defense witness purely for purposes of being impeached as to his
purported bias.

defenses to defeat criminal liability." *Lamberty*, 778 F.2d at 61 (*citing United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981)). The basis for the JTTF investigation does not pertain to the elements of the offenses charged, nor to a defense to those elements. A debate over the reasons for the JTTF's involvement in the investigation would not aid the jury in its determination of whether the Defendant misrepresented the existence of his 1991 marriage or a legally cognizable defense to it. This is true *a fortiori* when the Defendant's first and second charged misrepresentations, pre-dated the JTTF investigation altogether and are entirely consistent with his third misrepresentation during his naturalization interview in which he stuck with the same story.

Finally, evidence of bias of the immigration and customs officers in the case, if offered by the Defendant, must actually increase the possibility that the witnesses are in fact biased. *See United States v. Jarabek*, 726 F.2d 889, 902 (1st Cir. 1984)("The very slight probative value of such evidence on the issue of bias does not overcome the strong likelihood of confusion on the central issues in the case and undue delay in the trial.")(*citing Chipman v. Mercer,* 628 F.2d 528, 531 (9th Cir. 1980)). The Defendant cannot sustain this burden, especially when he is unaware of what the information is that would tend to show a bias.

**III.    Testimony or argument about the reasons for a Joint Terrorism Task Force investigation may unfairly prejudice the Defendant and would mislead or confuse a jury in determination of the charges in the indictment -- Fed. R. Evid. 403.**

**A.    Admission of the testimony would confuse, mislead and distract a jury.**

Permitting evidence of the JTTF investigation would also confuse, distract and mislead the jury, and should alternatively be excluded pursuant to Fed. R. Evid. 403. The Defendant's

proffered justification for this line of inquiry is to prove bias. *See United States v. Gomes*, 177 F.3d 76 (1st Cir. 1999)("The bias theory probably holds together, but the trial judge had discretion to exclude such an excursion into extrinsic evidence that would distract from the main issues and in this case would add little of practical value to the defense.")

As the Sixth Circuit observed, certain lines of questioning by defense counsel--even if claimed to be offered for the purpose of eliciting the Government's bias in prosecuting the case-- may be excluded when that testimony is likely to confuse the jury as to the real issues in the case. *United States v. Burge*, 990 F.2d 244, 249 (6th Cir. 1992). In *Burge*, the Sixth Circuit upheld the decision to limit a Defendant's direct examination of an investigating Government agent who was not called as a witness by the Government at trial, observing that "[t]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id*., at 249 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The logic underlying the trial court's decision in *Burge* is equally applicable in this case, where the "heart of the Government's case" consists of testimony of people involved in the events at issue, and the documentary evidence. Thus, evidence of the Government's "motives in prosecuting the Defendant would not, in any significant way, reflect on the credibility of those witnesses" and can properly be excluded. *Id.*

The admission of the existence of a JTTF investigation of the Defendant's activities by itself may prejudice the Defendant and confuse, mislead or distract the jury and should be precluded by the Court. *See United States v. Nogueira*, 585 F.2d 23 (1st Cir. 1978)("Forays into

10

collateral matters cannot be justified merely by invoking talisman of right to cross

examination."); *see also United States v. Cordova*, 157 F.3d 587 (8th Cir. 1998); *United States v.*

*Gray*, 730 F.3d 733 (11th Cir. 1984); *United States v. Snow*, 670 F.2d 749 (7th Cir. 1982).

Notwithstanding the JTTF's concern, this is not a case about terrorism, it is a case about the

Defendant's lies about his earlier marriage. To invite speculation as to why a JTTF investigation

was conducted would distract and mislead the jury from the central issues in the case. If in fact,

the jury were to learn the reasons for the JTTF's interest in the Defendant, then it is likely,

regardless of what that information is, that the jury would be distracted by that information, and

would be likely to consider that information, rather than the indictment before them, whether

elements of the charges have been met, and whether the elements of any valid defenses have

been met. The reasons for the investigation do not figure into this calculus.

### B.      Risk of Unfair Prejudice

Reference to the existence of or reasons for the JTTF investigation will also necessarily

invite speculation by the jury as to the whether the Defendant has committed other misdeeds. In

short, they will consider whether he is a terrorist. This consideration is wholly inappropriate for

a fact-finder sitting in judgment of an individual who stands accused of material

misrepresentations about a prior marriage. The risk and likelihood of unfair prejudice to the

Defendant is high, and the probative value of such inquiry, if any exists at all, is negligible at

best.[5] Consequently, in addition to confusion, the Defendant will bring prejudice upon himself

_____

[5]As the District Court for the Southern District of California recently found in a similar
circumstance, "distraction and confusion are bound to occur as a result of the public's
consumption of matters surrounding national and international post 9/11 war on terrorism
objectives. [The classified materials] would not increased the possibilities that the witness is
biased..." *U.S. v. Mohamed*, 410 F.Supp.2d 913, 916 (S.D. Cal. 2005) (citing *Jarabek*, 726 F.2d
889). Moreover, that Court found that the probative value of any bias cross-examination would

which may jeopardize the integrity of a conviction in this matter.  The only rationale for

injecting such issues into this case is to call for the jury to disregard the facts and the law, and to

acquit the Defendant because of some kind of selective prosecution theory.

A jury may in fact nullify and "bring in a verdict in the teeth of both law and facts".

*Horning v. District of Columbia*, 254 U.S. 135, 138 (1920).   However, although the jury retains

that power, the law does not countenance admission of evidence or argument supporting jury

nullification.  The line of inquiry that the Government seeks to exclude is testimony that the

Defendant may wish to introduce for the predominant purpose of encouraging jury nullification.

The Defendant may attempt to present inferences about "ulterior motives" of Government action

to suggest to the jury that the Government is persecuting the Defendant unfairly. That argument,

is not a proper defense to the guilt or innocence of the Defendant.[6]

---

be enhanced if one primary Government witness possessed substantial evidence on which the
Government relied to prove guilt. *Id.*  Instead, where the the evidence included INS Alien
registration file records, travel documents, naturalization application, and other Government
investigators, the trial court found that the evidence militated against the probative force of
unbridled cross-examination. *Id.*

[6]The Defendant is not entitled to a jury instruction describing jury nullification. *United
States v. Drefke*, 707 F.2d 978, 982 (8th Cir. 1983), *cert. denied*, 464 U.S. 942 (1983).  Likewise,
the Defendant is not entitled to present evidence or argument solely to promote jury nullification.
"[N]either a Defendant nor his attorney has a right to present to a jury evidence that is *irrelevant*
to a *legal* defense to, or an element of, the crime charged. Verdicts must be based on the law and
the evidence, *not* on jury nullification as urged by either litigant." *Zal v. Steppe*, 968 F.2d 924,
930 (9th Cir. 1992) (concurring opinion) (emphasis in original), *cert. denied*, 506 U.S. 1021
(1992).

IV.    **The reasons for the investigation of the Defendant include classified information, to which he is not entitled, in which the Government has a legal privilege, and the revelation of the existence of such information could additionally prejudice Defendant.**

If the Court is unpersuaded that the Rules of Evidence and relevant caselaw provide support for the preclusion of this intended line of questioning and argument by the Defendant, then the Court should preclude the line of questioning because it implicates classified information.  As indicated, the Defendant has been on notice of the existence of classified information relative to why an investigation commenced into the Defendant's activities. Through the discovery process, during the detention hearing, and in this motion *in limine*, the Government has provided notice of the existence of classified information.  Unlike other lines of inquiry, when a Defendant intends to broach classified information at a criminal trial, he cannot merely await trial to unveil his trial strategy.  *See e.g.* Fed. R. Crim. Pro. 12.1, 12.2 (relating to affirmative obligations of the Defendant to notice certain affirmative defenses.)  The provisions of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3, govern.

The fact that the information is classified is significant in two ways.  First, the Defendant has not followed the procedures listed in Section 5(a) of CIPA, which require that the Defendant provide specific and timely notice of the inquiry which he intends to make which would cause the disclosure of classified information.  Consequently, the sanction pursuant to Section 5(b) of CIPA applies and the Defendant should be precluded from exploring this area at trial.  Second, the Government has a legal privilege in the classified information which it is prepared to assert.

A.    **The Classified Information Procedures Act was not complied with, and requires preclusion of this line of testimony -- CIPA Section 5(b).**

Two of the most important duties of the Executive Branch are prosecuting violations of

13

federal criminal laws and protecting the nation's secrets. *See Haig v. Agee,* 453 U.S. 280, 307 (1981) ("[i]t is 'obvious and unarguable' that no governmental interest is more compelling than security of the Nation.")  Before the enactment of CIPA, the Government, in advance of trial, had to guess whether a Defendant would seek to disclose or cause the disclosure of classified information and speculate whether such information would be found admissible.   Primarily, CIPA provides uniform procedures under which the Government is made aware, prior to trial, whether classified information will have to be disclosed in open criminal proceedings.  The Government can then make an informed decision on whether the interests in proceeding with the prosecution outweigh the possible damage to the national security which may result from such public disclosure.  *See generally United States v. Collins*, 720 F.2d 1195, 1196-97 (11th Cir. 1983).

  In brief, CIPA requires the Defendant, who reasonably expects that his defense will result in disclosure of classified information, to give the Court and the Government pretrial written notice of the classified information he or she intends to disclose or to cause to disclose.  The Government may then seek a ruling as to whether the proffered classified information is relevant and admissible.  If any such classified information is ruled admissible, the Government may move that a summary be substituted for it, or alternately, the Government may move for a substitute statement or stipulation admitting facts that the classified information itself tends to prove.  If the Court rejects the substitution or summary and the Government does not want to disclose the classified information, the Court must order the Defendant not to disclose the classified information and may sanction the Government appropriately.

  The linchpin of CIPA is Section 5(a), which requires a Defendant who intends to disclose

or cause the disclosure of classified information to provide timely pretrial written notice of his

intention to the Court and the United States.  Section 5(a) expressly requires that such notice

"include a brief description of the classified information," and the leading case under Section

5(a) holds that such notice "must be *particularized*, setting forth *specifically* the classified

information which the Defendant reasonably believes to be necessary to his defense."  *United

States* v. *Collins*, 720 F.2d 1195, 1199 (11th Cir. 1983) (emphasis added); *see also United States*

v. *Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989)("a defendant seeking classified information . . . is

entitled only to information that is at least 'helpful to the defense of [the] accused'"); *United

States* v. *Smith*, 780 F.2d 1102, 1105 (4th Cir. 1985) (*en banc*).  This requirement applies to both

documentary exhibits and oral testimony, whether it is anticipated to be brought out on direct or

cross-examination.  *See*, *e.g.*, *United States* v. *Wilson*, 750 F.2d 7 (2d Cir. 1984); *United States v.

Collins*, 720 F.2d 1195 (11th Cir. 1983).

If the Defendant fails to provide a sufficiently detailed notice far enough in advance of

trial to permit the implementation of CIPA procedures, Section 5(b) allows the Court to preclude

disclosure of the classified information.  Similarly, if the Defendant attempts to disclose at trial

classified information which is <u>not</u> described in his Section 5(a) notice, preclusion is the

appropriate remedy under Section 5(b) of CIPA.  *See Smith*, 780 F.2d at 1105 ("A defendant is

forbidden from disclosing any such information absent the giving of notice."); *see generally

United States* v. *North*, 708 F. Supp. 389 (D.D.C. 1988).

   **B.    If the trial is delayed and the Defendant produces a CIPA Section 5(a) notice,
          he still would not be entitled to pierce the Government's privilege in the
          classified information.**

Simply put, the Defendant has not followed the rules of CIPA, despite being aware of the

existence of classified information and having previously attempted to pursue this line of inquiry at the detention hearing.  The Defendant has neither sought discovery of these materials, nor has he complied with the Local Rules 116.3, Fed. R. Crim. Pro. Rule 12(b)(3), nor Section 5(a) of CIPA.  Even if he had, the Defendant should not be permitted to introduce information for the irrelevancy described above, as the reasons for a JTTF interest in the Defendant has nothing to do with the crimes charged, and because any probative value of such information to the current indictment is far outweighed by the risk of unfair prejudice to the Defendant and the integrity of a conviction in this matter.  *See Mohamed*, 410 F.Supp.2d at 916-918 (precluding line of inquiry into classified information when Defendant charged with immigration offenses and the Government intended to call the JTTF agent.)

The Government has a valid legal privilege in classified information, which it is expected to assert in this case if necessary.  *See Yunis*, 867 F.2d at 625. The privilege is akin to a Government informer's privilege in determining how material such information would be to the defense case.  *See United States v. Roviaro*, 353 U.S. 53, 60-61 (1957).  In *Yunis*, 867 F.2d at 623, the District of Columbia Circuit Court of Appeals upheld the Government's claim of privilege when a Defendant sought discovery of transcripts of his own recorded statements.  That Court stated, "like a defendant seeking the informant's identity," where the Government properly asserts a national security and classified information privilege, information that may otherwise be within the scope of Rule 16 of the Federal Rules of Criminal Procedure (Rule 16) is not discoverable unless that information is "helpful to the defense of the accused."  *Yunis*, 867 F.2d at 623, *citing Roviaro*, 353 U.S. at 60-61.  The *Yunis* court also described this standard as "beneficial," *id.* at 625, and after examining the communications at issue, concluded that

"nothing in the classified documents goes to "the innocence of the defendant *vel non*, impeaches any evidence of guilt, or makes more or less probable any fact at issue in establishing a defense of the charges." *Id.* at 624.

The CIPA proceedings, which would be called for if the Government's motion is denied, would initially require a CIPA Section 5(a) advance submission of the Defendant's line of inquiry, and followed by an *in camera, ex parte* submission pursuant to CIPA Sections 2-6, executed by the Government and high level officials from any intelligence agency(ies) whose equities may be at stake. This typically would take several weeks to accomplish. This process, however, need not and should not be reached in this case, since the material has not only been previously prohibited from disclosure in a pre-trial proceeding, it was not sought in discovery, was not noticed pursuant to CIPA, is not helpful to the defense, risks prejudicing the Defendant, and has nothing whatsoever to do with the fact that the Defendant lied about his 1991 marriage. *See United States v. Gardner*, 611 F.2d 770, 774-775 (9th Cir. 1980)("The prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.")

This is all within the context that the line of inquiry can and should be precluded pursuant to Rules 402 and 403. In addition to those rules, it is likely that any classified information would be hearsay information, and inadmissible substantively pursuant to Federal Rule of Evidence 802. If the inquiry is not offered for the truth of the matter asserted, then it is further evident that the information is irrelevant to a fair adjudication of the immigration fraud offenses.

## **CONCLUSION**

The Government therefore asks this Court to use its discretion under Fed. R. Evid. 402, 403, Fed. R. Crim. Pro. 12(b),  Section 5(b) of CIPA, and the inherent authority of the Court, to exclude any reference or questioning on the initiation of the JTTF's investigation of the Defendant.  If the Court is inclined to deny the Government's motion, then the Government requests a CIPA section 5(a) notice from the Defendant and requests a continuance of the trial in this matter in order to submit a response.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

                         By:        /s/ Aloke S. Chakravarty
                                        ALOKE S. CHAKRAVARTY
                                        KIMBERLY P. WEST
                                        Assistant U.S. Attorneys

Dated: April 17, 2006


### Certificate of Service

I do hereby certify that a copy of the foregoing motion was served upon defense counsel by electronic notice on this 17th day of April 2006.

                                        /s/ Aloke S. Chakravarty
                                        ALOKE S. CHAKRAVARTY
                                        Assistant U.S. Attorney