# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| v. | ) | **Crim. No. 04-10214-GAO** |
| | ) | |
| **MOHAMED HAMADE** | ) | |

### GOVERNMENT'S SUPPLEMENT TO ITS *MOTION IN LIMINE* AND RESPONSE TO DEFENDANT'S PROPOSED INTENT TO ELICIT CLASSIFIED INFORMATION

The United States of America, by Michael J. Sullivan, United States Attorney, and Kimberly P. West and Aloke S. Chakravarty, Assistant United States Attorneys for the District of Massachusetts, hereby expands on the legal and discretionary bases for the preclusion of questioning and argument by the Defense regarding the Joint Terrorism Task Force and related charged terms[1], and law enforcement's initiation of the investigation into the Defendant's conduct or arguing to the jury about the reason for such initiation. Through the Defendant's Notice of April 26, 2007, the Defendant has expressed an intent to broach the reasons for the Government's initial attention toward the Defendant and to elicit classified information. Pursuant to the government's motion *in limine*, the court should deny this line of inquiry because it is beyond the scope of any permissible issue at trial and would jeopardize the fairness of the proceedings. Allowance of the government's motion also consequently avoids unnecessary litigation over classified information.

---

[1] Such charged terms include "National Targeting Center", "TECS", "Suspect and Violaters Index", watchlist, lookout, etc. As described below, these terms add nothing probative to this case, rather, confuse and invite speculation by a jury. Substituting neutral phrases such as "law enforcement communication" or other sanitized phrase conveys the same import. The benefit of having a trial record confirms that these phrases do not impeach any government witness' testimony.

The Defendant's proffered reason for this line of inquiry and argument is to rebut an intimation that the Defendant was linked to terrorism.  The government has never made such allegation, and shall not do so at trial.  Consequently, reference to the "Joint Terrorism Task Force", and the reasons for investigating the Defendant, should be properly precluded to both parties.

Because such a line of inquiry is inappropriate in this trial, as it was in the first trial, the Court should not reach the narrower issue of whether classified information could be elicited, and if so, what prophylactic measures need to be implemented to protect national security.  If the Court were to allow the Defendant to inquire about this irrelevant subject matter, the government would seek leave to proceed pursuant to section 6 of the Classified Information Procedures Act ("CIPA"), and the trial would unnecessarily be further delayed.

## Statement of Relevant Facts

The Defendant, Mohamed Hamade, is charged in a three-count indictment involving the simple fact that Hamade materially misrepresented the existence of his 1991 marriage in Greece to the Immigration Services of the United States.   In 1998, Hamade married Naomi DeChristopher in Vermont, and shortly thereafter, was permitted to adjust his status from a visitor to the United States, to a permanent resident.  At Defendant's interview with Immigration and Naturalization Services ("INS") in January 2000,  in order to obtain legal permanent residency in the United States, Hamade told Immigration Officer Toni Swanson ("Swanson") that he had a child with a former girlfriend, but that he had not been previously married to her. Approximately three years after obtaining his green card, in his application to become a naturalized citizen of the United States, Hamade again misrepresented that he had not been

married prior to 1998.  Finally, in 2003, at his citizenship interview with  Immigration Officer

Heather Berger ("Berger") of United States Citizenship and Immigration Services ("CIS", a

successor agency to the INS), the Defendant misrepresented that he had not been married prior to

Ms. DeChristopher.  These acts provide the basis for the indictment.

In May 2003, Immigrations and Customs Enforcement Special Agent Gregory Nevano

("Nevano"), who at the time was on the Joint Terrorism Task Force ("JTTF") in Boston,

received some classified information.  As a result, the JTTF took several investigative measures.

One of the steps that the JTTF took was to examine the Defendant's immigration file.  It became

apparent that the Defendant may have made misrepresentations regarding an earlier marriage in

Greece.  Nevano obtained a copy of the Greek Marriage certificate indicating that Hamade had

in fact married the mother of his child in Greece in 1991.

Prior to this discovery, in December 2002, the Defendant had applied to become a citizen

of this country and was required to have a naturalization interview with CIS.  Since that

interview had not yet occurred, when such an interview was scheduled, Nevano told Officer

Berger that he had an interest in the Defendant.  Nevano did not communicate any classified

information to Berger or to any other witness in this case.  Berger, who had conducted hundreds

of interviews of individuals suspected of committing marriage fraud upon the INS and CIS,

conducted the naturalization interview of the Defendant in 2003.  The Defendant lied about his

earlier wife again during this interview.

In December 2003, the Defendant traveled to Greece.  After Agent Nevano learned that

the Defendant had left the country, Nevano notified Customs and Border Protection ("CBP") to

have the Defendant interviewed upon his return.  Nevano did not communicate any classified

information to CBP.  On January 10, 2004, the Defendant returned to the United States through

New York's John F. Kennedy Airport, where he was given a secondary screening by then-CBP

Officer James Bratton ("Bratton").  The Defendant told Bratton that he had traveled to Greece to

visit his daughter from his previous marriage to a Greek citizen.

The Government intends to call Officers Swanson, Berger (now Melnyk) and Bratton as

witnesses in its case-in-chief.  In addition, the Government intends to call CIS Keeper of the

Records, Joanne Sassone and a number of civilian witnesses.  No classified information, has

been or will be offered by the Government as evidence, nor should it be elicited in this case.  The

government does not allege, nor does it intend to introduce any evidence linking the Defendant

with any allegation of or association with terrorist activities, consequently, the Defendant should

not be permitted to confuse and distract the jury with suggestions irrelevant to the issue of guilt

or innocence of the Defendant or bias of the witnesses.

## PREVIOUS RELATED PROCEEDINGS

The issue raised in the Defendant's notice of April 26, 2007 is not novel in this case.

This issue was addressed in advance of the previous trial in this matter in April 2006.  At that

time, the Government filed a substantially similar motion *in limine*.  The Court allowed the

Government's motion, except to the limited extent that the defense was permitted to inquire only

as to whether a Customs officer was prejudiced in his testimony with regard to statements that

the Defendant made.  At argument, the Defendant conceded that he had no reason to elicit the

classified information itself.  Rather, the Defendant reserved the strategic option to inquire as to

whether a witness could have been biased by the existence of an investigation, without reference

to the information was that gave rise to it. (Trial Tr. Day 1-8.)  It was this latter road which the

4

Defendant delicately and expertly toed, at the periphery of the Court's ruling.  The Defendant was permitted to argue *whether* there was an interest in the Defendant that may have affected the witness' trial testimony, rather than the nature of what that investigation entailed.  This is especially the case when, as became clear in the course of the trial, none of the government witnesses were aware of *why* the JTTF was interested in the Defendant.  The nature of the case has not changed, and a change in strategy does not change the legal analysis necessary to reference the JTTF or the reasons for the government's investigation of the Defendant.   They remain improper lines of inquiry by virtue of Rules 401, 403, and 611(b).

The Court determined then, as it should now, that the only probative value of broaching even the existence of an investigation of the Defendant, would be if it demonstrated prejudice of the fact witness who will testify to the damaging admissions of the Defendant which occurred *after* the Defendant was under investigation – that is, Officer Bratton's testimony about what the Defendant told him upon entry into the United States in January 2004. (Trial Tr. Day 1-23).[2] The transcript of the Court's discussion of the motion *in limine* prior to the first trial is attached for convenience.  *See* Attachment A (Trial Tr. Day 1-1 to 1-26).   The arguments are substantially the same, although at this juncture, we have the benefit of knowing what some of the operative testimony has been.  It is not enough that the existence of an investigation could prejudice the witness' recollection, to be admissible, it must be probative of the fact that it did Consequently, the lines over which the Defendant should not cross should be even more clearly

---

[2]In this regard, Officer Bratton was vigorously cross-examined by the Defendant in the first trial, and it was readily apparent that he was unaware as to the basis or nature of an investigation of the Defendant.  Bratton testified on cross-examination that he did not have any facts of any investigation regarding Mr. Hamade, and he all he knew was that ICE Agent Nevano had an interest in the Defendant, but did not know why, and that he was not told to ask any specific questions of the Defendant.  (Trial Tr. Day 2-43, 2-44.)

drawn.  In that context, the classified information which may have gave Agent Nevano reason to
enter a look-out in a CBP computer is entirely unconnected to any witness' testimony about the
Defendant's statements.  Simply put, such information cannot go to bias if it was unknown to the
witness.  Consequently, there is no legally cognizable basis for eliciting the classified
information sought in this case, when the fact witnesses were oblivious to same.  To hold
otherwise would be to threaten exposure of irrelevant classified information in any case in which
a JTTF investigator may have been involved for the sole reason that "the information provided to
the JTTF and other agencies suggesting that Mr. Hamade was linked to terrorism proved to be
unfounded." (Defendant's April 26, 2007 Notice.)  Respectfully, this statement is illogical, and
supposes a myriad of speculative conclusions. Moreover, it has no place in a trial in which there
is no allegation that Mr. Hamade did anything but lie about certain important facts to the
government – that should be scope of the jury's deliberation.

      The Court should rule unequivocally that the Defendant cannot reference "terrorism",
information related to a National Targeting Center "lookout", the nature of the JTTF
investigation, nor should he be permitted to inquire into or reference the basis of Agent Nevano's
interest in the Defendant, that is, the classified information.  These lines of inquiry are irrelevant
to any issue in the case, are baldly a plea for nullification, and would unfairly distract and
confuse a fact-finder.  They are beyond the bounds of evidence and discovery law.  A
consequence of an explicit ruling also obviates the need for further CIPA proceedings in this
case, which would otherwise involve obtaining security clearances for certain staff, and the
submission of highly-coordinated classified filings.

**ARGUMENT**

6

I.      **The District Court has the discretion to and should limit the scope of cross-examination in this case.**

The District Court can and should properly limit the scope of cross-examination in this case. Defendant has indicated through his response to the Government's motion *in limine*, that he intends to explore the basis for the JTTF's interest in him. Through inquiry at the July 30, 2004 detention hearing, Defendant learned that there was classified information which was unrelated to the charges and the court determined that it was not discoverable to the Defendant, even for impeachment purposes.[3]

The line of inquiry and the argument now pursued by the Defendant, is still inappropriate, as it was in the previous trial. This is not a case of the Government wishing to produce evidence to a jury and to preclude a vigorous cross-examination of the evidence produced. Rather, it is the *Defendant* who wishes to inject the existence, predication and nature of the JTTF's interest in the Defendant.[4] Because this information is not relevant to the

---

[3]At the detention hearing in this matter, a prior attorney for the Defendant sought classified information in this case which was arguably discoverable pursuant to the Jencks Act. Counsel stated, "My only concern is that I'm assuming, and we all are, that Mr. Hamade is not here because he lied on an INS document. Let's face it. Let's be honest. But, of course, the government is denying anything else." (Det. Hrng. Tr. P. 47). The Government made clear to the Defendant that the classified national security information was unrelated to the charges in the indictment. The Magistrate Judge was then shown, *ex parte*, classified information, and then declined to produce the material to the defense. The Court stated, "There's nothing in it that is any way inconsistent [with Agent Nevano's testimony.] There's nothing in it that's in any way exculpatory, and I think the representation that the agent made [that the information deals with other matters that have nothing to do with the case]... accurately describes it, so I decline to turn it over. " (Det. Tr. at 49-50.) Then-counsel also commented on the potential prejudice to the Defendant if this information would be exposed to a fact-finder, "... I feel like there's nothing I can do because, obviously, whatever the Court sees in there is going to be in your mind..." *Id.*

[4]To this point, in the first trial, the Defendant elicited testimony and argued about the basis of Officer Bratton's questioning of the Defendant, and made reference to the National Targeting Center, a TECS lookout, and a variety of other suggestive terms. At that trial, during a liberal cross-examination, there was no prior record of what a responsive answer would be.

indictment, has little, if any, probative value to any issue in the case, is likely to confuse, distract and mislead a jury and will prejudice the Defendant, such an inquiry should be clearly off-limits.

Federal Rule of Evidence 611(b) explicitly recognizes the Court's discretion and responsibility to limit cross-examination to "the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

"The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 413 (1988). Evidence relating to why the Defendant was selected for prosecution that is unrelated to the charges or defenses in the indictment is irrelevant and properly excludable under the Sixth Amendment. *See United States v. Zaccaria*, 240 F.3d 75 (1st Cir. 2001)("Nevertheless, cross-examination is not a freestyle exercise, but rather, must be conducted within reasonable limits." )(*citing to Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *United States v. Chaudhry*, 850 F.2d 851, 856 (1st Cir. 1988)). The trial judge should set suitable boundaries. *Id.*; *United States v. Twomey*, 806 F.2d 1136 (1st Cir. 1986)(to establish abuse of discretion in limiting cross-examination, "defendant must show that the restrictions imposed were clearly prejudicial.")

Neither *Crawford v. Washington,* 541 U.S. 36 (2004), as argued previously, or any other

---

However, now, with the benefit of a fulsome record, it is clear that Officer Bratton knew nothing of the basis or nature of the immigration agent's interest in the Defendant, consequently, a reference to these terms would unfairly confuse and distract a jury from the central issue, which is what did the Defendant tell Officer Bratton. Consequently, during this trial, the Court should limit the language used to describe the fact that CBP was asked by another law enforcement agent to conduct a secondary examination of the Defendant, and to report the results to the agent. References to the National Targeting Center, TECS, SAVI, "lookout", etc., add nothing probative to this line of inquiry, and contrarily, distract the jury and invite speculation.

case, creates a right to confront information possessed by the Government which is *not* implicated by the criminal indictment. *Id.* Consequently, the Supreme Court and the First Circuit firmly endorse the trial court's discretion to limit the scope of cross-examination. *See Chaudhry*, 850 F.2d at 856-857; *See United States v. Gardner*, 611 F.2d 770, 774-775 (9th Cir. 1980)("The prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.")

Here, the charges center around the fact that the Defendant had been married in 1991, and he misrepresented the existence of this marriage to the INS/CIS on three separate occasions. Because the existence of and reasons for the interest of the JTTF in the Defendant are wholly unrelated to the charged conduct, evidence or testimony relating to such interest is irrelevant to a fact-finder. Such inquiry would confuse, mislead and distract a jury from determining the appropriate factual issues in the case, the elements of the charged offenses and credibility of witnesses.

The Defendant has offered no legally cognizable rationale which would require a reference to the JTTF, or to the basis for the Government's investigation of the Defendant. The Defendant has failed to make a *prima facie* showing of why these facts are in any way admissible or germane.

By making reference to a JTTF investigation, the Defendant may be attempting to argue that the immigration officers' credibility is questionable, or that the Defendant is being improperly prosecuted. Both of these arguments are improper, the first because, as is now clear in the record, the Government's witnesses were not aware of the reasons for the JTTF

investigation, and the misrepresentations to the immigration officers had nothing to do with terrorism, and second, because the improper prosecution argument at trial would unnecessarily call for jury speculation as to facts unrelated to the criminal charges, essentially a plea for nullification. This is especially the case when the Defendant, for the first time, suggests that he will elicit classified information, years after his indictment, and over a year after a mistrial in the case. The Defendant appears to be tacitly advancing a selective prosecution claim before the jury. Even if the record did support a claim, that would be a legal issue, not one for the jury to speculate about. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996)(describing heavy defense burdens in selective prosecution claims). Nevertheless the Defendant still would not, and cannot meet his high *prima facie* burden of establishing a selective prosecution claim.[5] Regardless of the reasons for the investigation, the Indictment is about the Defendant's immigration fraud and the false statements he made to immigration officers.[6]

## II.    The reason why the Defendant was being investigated by law enforcement is irrelevant to a fair and complete adjudication of the indictment

The proper scope of inquiry at a criminal trial starts with the indictment and the

---

[5]A selective prosecution claim, as a claim of a defect in instituting the prosecution, must be made before trial. Fed. R. Crim. Pro. 12(b)(3)(A). Such a claim has not been made. In any event, to support a claim of selective prosecution, the Defendant must establish that the decision to prosecute was motivated by a discriminatory purpose. *Wayte v. United States*, 470 U.S. at 608. Because he has failed to do so, he is not entitled to put evidence relating to selective prosecution before the jury or to argue to the jury that they has been unfairly singled out for prosecution.

[6] *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("so long as the prosecutor had probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion"); *see also Wayte*, 470 U.S. at 607-08 (prosecutor has broad discretion in assessing factors such as the strength of a case, its general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan.)

elements of the charged offenses. *See United States v. Lamberty*, 778 F.2d 59, 61 (1st Cir. 1985). In addition, the legal defenses to these elements may also be explored. *Id.* In this case, the Defendant's intended line of inquiry and argument accomplishes none of these goals, and should be precluded *in limine*.[7]

Rules 401 and 402 prohibit the admission of irrelevant evidence and defines relevance as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." As the Eighth Circuit has cautioned:

> Although the definition of "relevant evidence" given in Federal Rule of Evidence 401 is broad, it does have limits. Evidence must be probative of a fact of consequence in the matter, and must have a tendency to make the existence of that fact more or less probable that it would have been without the evidence.

*United States v. Hollister*, 746 F.2d 420, 422 (8th Cir. 1984).

Whether a fact is material is determined by the substantive law that governs an action, which in a criminal case "consists of elements of the offense charged and any relevant defenses to defeat criminal liability." *United States v. Lamberty*, 778 F.2d 59, 61 (1st Cir. 1985) (*citing United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981)). The basis for the JTTF investigation does not pertain to the elements of the offenses charged, nor a defense to those elements. As described, it neither goes to impeach the government witnesses in this regard. A debate or speculation over the reasons for the JTTF's involvement in the investigation would not aid the jury in its determination of whether the Defendant misrepresented the existence of his 1991 marriage or a legally cognizable defense to it. This is true *a fortiori* when the Defendant's

---

[7]Moreover, if the Court finds that the line of inquiry is irrelevant, then the Defendant cannot call government agents who are possessed of classified information purely for purposes of being impeached as to his "bias".

first and second charged misrepresentations pre-dated the JTTF investigation altogether and are

entirely consistent with his third misrepresentation during his naturalization interview in which

he predictably stuck with the same story.

The Defendant's proposed line of inquiry does not even go to bias of any witness

against the Defendant.  First, agents who were involved in the JTTF investigation related to the

Defendant are not being called as witnesses for the Government.  Second, the record is clear that

the Government's witnesses were not aware of the predication for the JTTF investigation, and

thereby could not be biased for that reason. Third, evidence of bias of the immigration and

customs officers in the case, if offered by the Defendant, must actually increase the possibility

that the witnesses are in fact biased.  *See United States v. Jarabek*, 726 F.2d 889 (1st Cir.

1984)("The very slight probative value of such evidence on the issue of bias does not overcome

the strong likelihood of confusion on the central issues in the case and undue delay in the

trial.")(*citing Chipman v. Mercer,* 628 F.2d 528, 531 (9th Cir. 1980).)  The Defendant could not

previously and cannot now sustain this burden, let alone demonstrate the need to delve into any

classified information.

**II.    Testimony or argument about the Joint Terrorism Task Force investigation may
unfairly prejudice the Defendant and would mislead or confuse a jury in
determination of the charges in the indictment**

**A.    Admission of the testimony would confuse, mislead and distract a jury.**

Permitting evidence of the nature of and reasons for the JTTF investigation would also

confuse, distract and mislead the jury by inviting speculation and should also be excluded

pursuant to Fed. R. Evid. 403.  The Defendant's proffered justification for this line of inquiry is

no longer to prove bias and the nature of the Government's case and witnesses, which would be

insufficient of itself.  *See United States v. Gomes*, 177 F.3d 76 (1st Cir. 1999)("The bias theory

probably holds together, but the trial judge had discretion to exclude such an excursion into

extrinsic evidence that would distract from the main issues and in this case would add little of

practical value to the defense.")  Rather, this time around, the Defendant says that such

testimony is necessary to rebut innuendo.  Such innuendo, should any be generated, would

wholly be created by and argued by the Defendant, not the government.  It is inappropriate for

either party to argue innuendo.  Put another way, there is no reasonable inference to be drawn

from admissible evidence at trial that the Defendant is a terrorist, and the Defendant should not

be able to argue that the government thought he was.

In *United States v. Burge*, 990 F.2d 244, 249 (6th Cir. 1992)*,* the Sixth Circuit upheld the

decision to limit a Defendant's direct examination of an investigating Government agent who

was not called as a witness by the Government at trial, observing that "[t]rial judges retain wide

latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . .

cross-examination based on concerns about, among other things, harassment, prejudice,

confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally

relevant." *Id*., at 249 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).  The logic

underlying the trial court's decision in *Burge* is equally applicable in this case, where the "heart

of the Government's case" consists of testimony of people involved in the events at issue and the

documentary evidence.  Thus, evidence of the Government's "motives in prosecuting the

Defendant would not, in any significant way, reflect on the credibility of those witnesses" and

can properly be excluded.  *Id.*

The admission of the existence of a JTTF investigation of the Defendant's activities by

itself may prejudice the Defendant and confuse, mislead or distract the jury and should be precluded by the Court.  *See United States v. Nogueira*, 585 F.2d 23 (1ˢᵗ Cir. 1978)("Forays into collateral matters cannot be justified merely by invoking talisman of right to cross examination.").  Notwithstanding the JTTF's concern, this is not a case about terrorism, it is a case about the Defendant's lies about his earlier marriage.  To invite speculation as to the reasons why a JTTF investigation was conducted of the Defendant would distract and mislead the jury from the central issues in the case.  Disclosure at trial of the existence or reason for the JTTF's interest in the Defendant, regardless of what they are, will necessarily draw the fact-finder's attention away from the necessary decisions they have to make in this case: whether elements of the charges have been met, and whether the elements of any valid defenses have been met.  The reasons for the investigation do not figure into this calculus.

### B.     Risk of Unfair Prejudice

Reference to the existence of or reasons for the JTTF investigation will also necessarily invite speculation by the jury as to the whether the Defendant has committed other misdeeds.  In short, they may errantly consider whether he is or is not a terrorist.[8]  This consideration is wholly inappropriate for a fact-finder sitting in judgement of an individual who stands accused of material misrepresentations about a prior marriage.  The risk and likelihood of unfair prejudice to the Defendant is high, and the probative value of such inquiry, if any exists at all, is negligible

---

[8]*See United States v. Mohamed*, 410 F.Supp.2d 913, 916-918 (S.D.Ca. 2005)(precluding line of inquiry into classified information when Defendant charged with immigration offenses and the Government intended to call the JTTF agent.)

at best.[9]  Consequently, in addition to confusion, the Defendant will inappropriately bring a prejudice upon himself which may jeopardize the integrity of a conviction in this matter.  The only rationale for injecting such issues into this case is to call for the jury to disregard the facts and the law, and to acquit the Defendant because of some kind of selective prosecution nullification theory.  This is what the Defendant suggests he is poised to do.

A jury may in fact nullify and "bring in a verdict in the teeth of both law and facts". *Horning v. District of Columbia*, 254 U.S. 135, 138 (1920).   However, although the jury retains that power, the law does not countenance admission of evidence or argument supporting jury nullification.  The line of inquiry that the Government seeks to exclude is a potential defense strategy which improperly invites jury nullification.  The Defendant may attempt to present inferences about "ulterior motives" of Government action to suggest to the jury that the Government is persecuting the Defendant unfairly. That argument is not a proper defense to the guilt or innocence *vel non* of the Defendant, and is not based in the evidence.[10]

---

[9]As the District Court for the Southern District of California found in a similar circumstance, "distraction and confusion are bound to occur as a result of the public's consumption of matters surrounding national and international post 9/11 war on terrorism objectives. [The classified materials] would not increase[] the possibilities that the witness is biased..." citing to *Jarabek*, *infra*.  *U.S. v. Mohamed*, 410 F.Supp.2d 913 (S.D. Ca. 2005). Moreover, that Court also found that the probative value of any bias cross-examination would be enhanced if one primary Government witness possessed substantial evidence on which the Government relied to prove guilt. *Id.*  Instead, where the the evidence included INS A-file records, travel documents, naturalization application, and other Government investigators, the trial court found that the evidence militated against the probative force of unbridled cross-examination. *Id.*

[10]The Defendant is not entitled to a jury instruction describing jury nullification. *United States v. Drefke*, 707 F.2d 978, 982 (8th Cir. 1983), *cert. denied*, 464 U.S. 942 (1983).  Likewise, the Defendant is not entitled to present evidence or argument solely to promote jury nullification. "[N]either a Defendant nor his attorney has a right to present to a jury evidence that is *irrelevant* to a *legal* defense to, or an element of, the crime charged. Verdicts must be based on the law and the evidence, *not* on jury nullification as urged by either litigant." *Zal v. Steppe*, 968 F.2d 924,

**III.    The reasons for the investigation of the Defendant implicate classified information, to which he is not entitled, in which the Government has a legal privilege, and the revelation of the existence of such information could additionally taint the trial.**

If the Court is unpersuaded that the law of evidence and the law of discovery supports the preclusion of this intended line of questioning and argument by the Defendant, then the Court should preclude the line of questioning because it implicates classified information. As indicated, the Defendant has been on notice of the existence of classified information relative to why an investigation commenced into the Defendant's activities. Through the discovery process, during the detention hearing (and the Court's *ex parte* review), previous motions *in limine*, the Government has provided notice of the existence of classified information. Perhaps educated by the previous litigation of this matter, on the eve of trial, the Defendant has invoked the provisions of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3 §5(a) to provoke the matter. Although procedurally correct, and it is welcome to resolve these matters prior to as opposed to during trial, this invocation is flawed by the fact that it is not legally justified.

In its submission of April 16, 2006, the Government briefed the nature of CIPA, and how it balances the national security interests with a defendants' right to information. The Government also explained the procedures by which a defendant who may anticipate the elicitation of Classified information, must provide notice to the Court and Government. This need not be reiterated here. Although the Defendant has followed CIPA this time around, the basis for his desired elicitation can and should be resolved on rules of evidence and procedure without reaching the analysis and balancing envisioned by CIPA. However, if the Court should

930 (9th Cir. 1992) (concurring opinion) (emphasis in original), *cert. denied*, 506 U.S. 1021 (1992).

deny the government's motion *in limine* and find that the CIPA analysis is required in this case, then, (A) the government will require more specific section 5(a) notice as to the precise information expected to be elicited or disclosed by the Defendant, and why it is *necessary* for the defense, so that it can prepare tailored supplemental briefing regarding CIPA[11], and (B) the government will embark on the time-consuming coordination required to submit an *in camera, ex parte* classified filing to the Court pursuant to Section 6 of CIPA, which among other things, would likely assert a national security privilege in classified information.[12]

This process, however, need not and should not be reached in this case, since the material has not only been previously prohibited from disclosure in a pre-trial proceeding, it was not sought in discovery, was limited from elicitation in the last trial, is not helpful to the defense, risks prejudicing the Defendant, and has nothing whatsoever to do with the fact that the Defendant lied about his 1991 marriage.

This is all within the context that the line of inquiry can and should be precluded pursuant to the rules of evidence. In addition to those rules, it is likely that any classified information

---

[11] Section 5(a) of CIPA expressly requires that such notice "include a brief description of the classified information," and the leading case under Section 5(a) holds that such notice "must be *particularized*, setting forth *specifically* the classified information which the Defendant reasonably believes to be necessary to his defense." *United States* v. *Collins*, 720 F.2d 1195, 1199 (11th Cir. 1983) (emphasis added); *see also United States* v. *Yunis*, 867 F.2d at 623 ("a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'"); *United States* v. *Smith*, 780 F.2d 1102, 1105 (4th Cir. 1985) (*en banc*). This requirement applies to both documentary exhibits and oral testimony, whether it is anticipated to be brought out on direct or cross-examination. *See*, *e.g.*, *United States* v. *Wilson*, 750 F.2d 7 (2d Cir. 1984); *United States v. Collins*, 720 F.2d 1195 (11th Cir. 1983).

[12] The documents required to submit the appropriate memoranda and affidavits pursuant to CIPA Sections 2-6, executed by the Government and high level officials from any intelligence agency(ies) whose equities may be at stake typically takes several weeks to accomplish.

would be hearsay information, and inadmissible substantively pursuant to Federal Rule of

Evidence 802.  If the inquiry is not offered for the truth of the matter asserted, then it is further

evident that such information is irrelevant to a fair adjudication of the immigration fraud

offenses.

<u>**CONCLUSION**</u>

The Government therefore asks this Court to use its discretion under Fed. R. Evid. 401,

402, 403, 611, Fed. R. Crim. Pro. 12(b), 16(a)(2) & (d), Sections 4 & 5(b) of CIPA, and the

inherent authority of the Court, to exclude any reference to prejudicial terms, and the initiation or

nature of the JTTF's investigation of the Defendant.  If the Court is inclined to deny the

Government's motion, then the Government requests a more particularized CIPA section 5(a)

notice from the Defendant so that it may appropriately prepare a classified *in camera ex parte*

response pursuant to section 6 of CIPA, and requests a continuance of the trial in this matter in

order to submit such a response.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ Aloke S. Chakravarty
ALOKE S. CHAKRAVARTY
KIMBERLY P. WEST
Assistant U.S. Attorneys

Dated: May 9, 2007

<u>Certificate of Service</u>

I do hereby certify that a copy of the foregoing motion was served upon defense counsel
by electronic notice on this 9th day of May 2007.

/s/ Aloke S. Chakravarty
ALOKE S. CHAKRAVARTY
Assistant U.S. Attorney

18